## AFFIDAVIT

Your Affiant, Cory Miles, deposes and states:

1. Your Affiant is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since July of 2014. I have over seventeen (17) years of law enforcement experience and attended multiple law enforcement specific schools with the City of Sunny Isles Beach Police Department located in Miami-Dade County, Florida. I served in the United States Marine Corps for five (5) years active duty and was promoted to the rank of Staff Sergeant before I was honorably discharged at the end of duty. I graduated from the Federal Law Enforcement Training Center and am currently assigned to the ATF Cleveland field office. I have participated in numerous state and federal firearms investigations.

## PROBABLE CAUSE

2. On February 22, 2024, the Confidential Informant (CI) purchased two pistols from Federal Firearms Licensee (FFL) Cleveland Armory located at 9100 Bank St., Cleveland, Ohio. On February 29, 2024, the CI attempted to purchase two additional pistols from FFL Cleveland Armory but was unable because the National Instant Criminal Background Check System (NICS) background checks were not operatable. Shortly after leaving Cleveland Armory, the CI went to FFL Parma Gun Shop located at 5907 State Rd., Parma, Ohio, and purchased two pistols. Three of the pistols were Micro Dracos and one of the pistols was a Mini Draco. They were paid with cash totaling $4,220.20.

3. The CI stated that the firearms were purchased for an individual known to him/her as "Charles." The CI stated that he/she met "Charles" online and provided agents with the

number 510-746-6038 as a contact number for "Charles." The CI stated that he/she used that number to converse with "Charles" to include talk about the purchase of firearms. The CI stated that "Charles" paid the CI approximately $40 for the purchase of the firearms.

4. According to the CI, on February 22, 2024, he/she picked-up "Charles" at a residence in Akron, Ohio, (778 Yale Street) because "Charles" asked if the CI would go with him to purchase firearms because he needed them for a security business. The CI drove the CI's vehicle to Cleveland Armory. The CI stated that after arriving in the parking lot, "Charles" gave the CI cash, told the CI to purchase the specific model of pistols, and waited in the car. After realizing the price of the pistols, the CI stated that he/she returned to the CI's car and "Charles" provided more cash. The CI then returned to the store and completed the purchase. The CI then drove "Charles" back to the house in Akron. The CI stated "Charles" carried the firearms as they entered the apartment and the firearms remained with "Charles" in the apartment, when the CI left.

5. The CI stated that on February 29, 2024, "Charles" drove to the CI's residence in a Chevy Tahoe described by "Charles" as his brother's car. The CI stated that "Charles" drove to the Cleveland Armory, provided the cash, told the CI what firearms to buy, and waited in the car as the CI went into the store. The CI stated that the store was unable to sell the firearms because the NICS background check computer system was not operable. The CI stated that "Charles" drove the CI to the Yours Truly restaurant located at 8111 Rockside Rd., Valley View, Ohio. After eating, the CI stated that "Charles" drove the CI to the Parma Gun Shop, provided the cash, told the CI what firearms to buy, and waited

in the car as the CI went into the store. The CI stated that after purchasing the pistols, "Charles" drove the CI back to the CI's residence and left with the pistols.

6. On February 29, 2024, a Valley View Police Officer was in the Cleveland Armory when the CI entered the store. The Officer recognized the CI because he was also in the store when the CI purchased the two pistols on February 22, 2024. The Officer thought it was suspicious that the CI was attempting to purchase two more pistols of the same model that CI bought the previous week, so the officer followed the CI to the parking lot. The Officer saw the CI get into a Gray Tahoe with a black male driver. The Tahoe had an Ohio tag of KCZ1186.

7. The Tahoe is registered to the individual whom "Charles" stated was his brother and was at the same location where CI picked-up "Charles."

8. The CI described "Charles" as dark skin, 5' 08", slender build, tattoos, with a close-cut beard, mustache, and a skinny dreadlock ponytail. The CI stated that "Charles" had a tattoo that said "Chewy" on his belly. The CI stated that "Charles" told the CI that he was 32 years of age and provided his date of birth. The CI stated that "Charles" told the CI that he cannot purchase firearms and that he served prison time in California.

9. Your Affiant reviewed video surveillance at Cleveland Armory. The video revealed that on February 22, 2024, the CI drove the CI's vehicle to the store. At approximately 2:00pm the CI entered the store. During the transaction, the CI would ask a question to the clerk, the clerk would respond, the CI would manipulate the CI's phone, then the CI would look up from the phone and ask or answer questions. The CI was heard stating that he/she did not have enough money. The CI left the store and returned two minutes later and presented the clerk with the total funds.

10. Video surveillance at the Cleveland Armory on February 29, 2024, verified the CI was a passenger in a gray Chevy Tahoe. At approximately 12:55pm, the CI entered the store, determined that firearms could not be purchased at the time, and left at approximately 1:02pm.

11. Video surveillance at the Yours Truly restaurant on February 29, 2024, confirmed the CI was accompanied by an individual matching the description of "Charles" at the appropriate time frame that they would have been there.

12. Video surveillance screenshots from Parma Gun Store on February 29, 2024, verified the CI was alone inside of the store. It also verified the gray Chevy Tahoe was in the parking lot.

13. A forensic search of the CI's phone revealed several calls to 510-746-6038 in the same time frame as the firearm purchases. It also revealed a picture matching the description of "Charles" given by the CI. The CI identified the photo in the phone as "Charles." An open-source social media search revealed the picture was of Chariece CHEW, with the same date of birth provided by the CI.

14. A records check revealed CHEW had multiple felony convictions and is currently under Federal supervised release in the Northern District of California in case number 3:18CR198. The U.S. Probation Officer assigned to CHEW verified that the picture located on the CI's phone is a picture of CHEW. The Officer also provided an address of 27939 Thornton Ct., Hayward, California 94544, as CHEW's residence.

15. On April 19, 2024, your Affiant authored and swore to a Search Warrant compelling T-Mobile to provide historical cell phone data for target number 510-746-6038.

16. The data provided indicated that the target number was located in the area of CHEW's residence on February 15, 2024. In the early morning of February 15, 2024, the target number began moving south through San Jose, Los Angeles, and then to Las Vegas. On February 16, 2024, the target number traveled from Las Vegas through Arizona and into New Mexico. On February 17, 2024, the target number traveled into Texas and stopped in Amarillo before traveling into Oklahoma, Missouri, Illinois, Indiana, and Ohio on February 18, 2024. The target number stopped in Toledo on February 19th for a few hours before traveling through Cleveland and eventually stopping in Akron near the address provided by the CI (778 Yale Street).

17. On February 22, 2024, the target phone is located at the Akron residence until approximately 1pm. At approximately 2pm the target phone is located near the Cleveland Armory. At approximately 3:40pm the target phone returns to the Akron residence.

18. On February 29, 2024, the target phone is located at the Akron residence until approximately 10:30am. At approximately 10:54am, the target phone is located near the CI's residence in Medina. At approximately 12:32pm, the target phone is located near the Cleveland Armory and Yours Truly. At approximately 1:03pm, the target phone is located near the Parma Gun Shop. At approximately 4:05pm, the target phone is located near the CI's residence in Medina. At approximately 5:49pm, the target phone returns back to the Akron residence.

19. On March 7, 2024, the target phone left the Akron area. The target phone traveled through Kentucky, Tennessee, Arkansas, Louisiana, and arrived in Houston Texas on March 8, 2024. The phone remained in Houston until March 16, 2024, when it traveled

to New Mexico, Arizona, and into California on the 17th. The target phone arrived back at CHEW's residence on March 18, 2024.

20. On April 18, 2024, at approximately 3:18pm, U.S. Probation met with CHEW at CHEW's residence. The target phone was located at the residence at the same time the officer was with CHEW.

21. On May 3, 2024, the CI identified CHEW who is the person the CI knows as "Charles" in a six-person line-up.

22. Affiant is and ATF Interstate Nexus Expert and determined that the aforementioned firearms, the three Romarm Micro Draco pistols (serial #s 23PMD-49070, 23PMD-48829, and 23PMD46205) and the one Romarm Mini Draco pistol (22PG-7029) were manufactured outside of the State of Ohio. Thus, the aforementioned firearms must have traveled in interstate and/or foreign commerce to be found in the state of Ohio.

## CONCLUSION

23. Based upon the above listed facts and circumstances, your Affiant believes and asserts that there is probable cause to believe on February 22, 2024, and February 29, 2024, CHEW, knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm in and affecting interstate commerce, in violation of Title 18, U.S.C., Section 922(g)(1).

24. Based upon the above listed facts and circumstances, your Affiant believes and asserts that there is probable cause to believe on February 22, 2024, and February 29, 2024, CHEW, did conspire to purchase, any firearm in or otherwise affecting interstate or foreign commerce for, on behalf of, or at the request or demand of any other person, knowing or having reasonable cause to believe that such other person had been convicted

of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, U.S.C., Section 932(b)(1).

Special Agent Cory Miles
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to via telephone after submission by reliable electronic means. Fed. R. Crim. P. 3, 4(d), and 4.1. this 3rd day of June, 2024. at 2:15 p.m.

Jennifer Dowdell Armstrong
United States Magistrate Judge